## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO.  3:14-CV-257-MOC-DCK

| | | |
|---|---|---|
| MATTHEW JENNER and<br>JULIA MARKSON, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| PHILLIP J. HICKS, | ) | |
| WILLIAM H. DOUGHERTY, and | ) | |
| WILLIAM E. SCHERFFIUS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendants' "Motion To Dismiss For

Failure To State A Claim" (Document No. 23).  This motion has been referred to the undersigned

Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate.  Having

carefully considered the motion, the record, and applicable authority, the undersigned will

recommend that the pending motion to dismiss be <u>granted in part</u>, and <u>denied in part</u>.  The

undersigned will also recommend that Defendants' "Motion To Strike" (Document No. 31) be

<u>denied</u>.

### BACKGROUND

Plaintiffs Matthew Jenner ("Jenner") and Julia Markson ("Markson") (together,

"Plaintiffs") initiated this action with the filing of a "Complaint" (Document No. 1) on May 21,

2014.  Defendants Phillip J. Hicks ("Hicks"), William H. Dougherty ("Dougherty"), and William

E. Scherffius ("Scherffius") (together, "Defendants") responded with their "Motion To Dismiss

For Failure To State A Claim" (Document No. 9) filed on July 10, 2014.  Subsequently, the parties filed a "Consent Motion For Leave To File An Amended Complaint" (Document No. 15) on August 14, 2014, which was immediately granted by the Court.  See (Document No. 16).

Plaintiffs' "First Amended Complaint" (Document No. 17) ("Amended Complaint") was promptly filed with the Court on August 14, 2014.  The Amended Complaint asserts causes of action for:  (1) negligent misrepresentation;  (2) fraud in the inducement;  (3) constructive fraud; (4) tortious interference with contract;  (5) civil conspiracy;  (6) unfair and deceptive trade practices;  and (7) punitive damages.  (Document No. 17, pp.14-20).

Based on the filing of the Amended Complaint, the undersigned issued a "Memorandum And Recommendation" (Document No. 20) on August 19, 2014, recommending that the "Motion To Dismiss For Failure To State A Claim" (Document No. 9) be denied as moot. Defendants then filed a renewed "Motion To Dismiss For Failure To State A Claim" (Document No. 23) on September 10, 2014, seeking dismissal of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).  Also on September 10, 2014, Defendants' "Answer To Plaintiffs' First Amended Complaint" (Document No. 24) was filed.

No objections were filed to the "Memorandum And Recommendation" (Document No. 20) and it was affirmed by the "Order" (Document No. 27) of the Honorable Max O. Cogburn, Jr. on September 16, 2014.  The renewed motion to dismiss was fully briefed as of October 22, 2014.

On October 27, 2014, "Plaintiffs' Attachments To The First Amended Complaint" (Document No. 30) was filed.  Plaintiffs did not seek leave to amend the Amended Complaint, or otherwise move the Court to accept the proposed attachments.  Defendants immediately filed a "Motion To Strike" (Document No. 31) pursuant to Fed.R.Civ.P. 12(f).  "Plaintiffs' Brief In

Opposition To Defendants' Motion To Strike" (Document No. 32) was filed on November 14, 2014. Defendants have failed to file a reply brief in support of their motion to strike, or a notice of intent not to file a reply brief. See Local Rule 7.1 (E).

The pending motions are ripe for review and disposition, and therefore, the undersigned submits this Memorandum And Recommendation to Judge Cogburn.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

3

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## DISCUSSION

As an initial matter, the undersigned notes that there is little, if any, meaningful dispute about the factual background of this case; rather, Defendants challenge the sufficiency of the alleged facts to support Plaintiffs' claims. Therefore, the undersigned will attempt to briefly summarize the key facts.

Defendants are, or were, all officers and/or directors of EcoPlus, Inc. ("EcoPlus"), a Wyoming corporation with a principal place of business in Huntersville, North Carolina. (Document No. 17, p.2). EcoPlus' primary business is/was treating used brown kitchen grease to convert it into usable solid fuel. Id. EcoPlus licensed its intellectual property and technology from Ecosolve, LLC ("Ecosolve"). Id.

In or about April 2008, representatives of Defendants, along with Defendant Hicks, entered into negotiations with a representative of Plaintiffs regarding short-term loan investments in EcoPlus. (Document No. 17, pp.4-5). In May 2008, each Plaintiff entered into a "Loan Agreement" with EcoPlus involving a loan of $150,000.00. (Document No. 17, pp.8-9).

On February 15, 2011, Plaintiffs filed suit in this Court against EcoPlus, alleging breach of Plaintiffs' Loan Agreements. (Document No. 17, p.12) (citing Jenner and Markson v. EcoPlus, Inc., 3:11cv084-MOC-DSC (Document No. 1) (W.D.N.C. Feb. 15, 2011)). The

complaint in the prior litigation included copies of the underlying Loan Agreements. See 3:11cv084-MOC-DSC, (Document Nos. 1-1 and 1-2). Jenner, Markson, and EcoPlus later stipulated to the dismissal of the prior litigation in this Court, in favor of venue in England. (Document No. 17, p.12).

The High Court of Justice of England and Wales, Queen's Bench Division, entered a default judgment in favor of Plaintiffs against EcoPlus on June 21, 2011. Following consideration before the Superior Court of Mecklenburg County, North Carolina and the North Carolina Court Of Appeals, Plaintiffs' English Judgment was eventually recognized in North Carolina on January 22, 2013. (Document No. 17, p.13). The Clerk of Superior Court of Mecklenburg County issued a Writ of Execution against EcoPlus in the amount of $758,523.00 plus 8% interest accruing, on March 1, 2013. Id. Plaintiffs contend they have received a single payment of $347.92. Id.

The Amended Complaint notes that Plaintiffs received responses to Interrogatories in Aid of Execution on EcoPlus, in November 2013, verified under oath by Defendant Scherffius in his capacity as COO of EcoPlus. (Document No. 17, pp.13-14). Plaintiffs now contend that they did not "learn of the true extent of Defendants' deceptions" until receiving those responses. (Document No. 28, p.9).

The crux of Plaintiffs' current lawsuit is that Defendants improperly withheld information regarding the extent of Defendants' relationship with Ecosolve; the true financial condition of EcoPlus and/or Ecosolve; and their plans/intentions to transfer assets to or from Ecosolve. (Document No. 17).

**A. Motion To Dismiss**

Defendants' "Motion To Dismiss…" asserts that all of Plaintiffs' claims must be dismissed for failure to state a claim upon which the Court may grant relief.  (Document No. 23) (citing Fed.R.Civ.P. 12(b)(6)); see also, (Document No. 23-1).  Specifically, Defendants contend that Plaintiffs have not plausibly alleged:  (1) a false statement to support a fraud or negligent misrepresentation claim;  (2) that Plaintiffs justifiably relied on Defendants' alleged omissions when entering the Loan Agreements;  or (3) the existence of a special relationship sufficient to support the constructive fraud claim.  (Document No. 23, p.2).  Defendants further contend that the applicable statute of limitations bars Plaintiffs' claims for intentional interference with contractual relations and unfair and deceptive trade practices.  Id.  Based on these contentions, Defendants conclude the remaining claims must also fail.  (Document No. 23, p.3).

The undersigned assesses the claims and arguments for dismissal as follows.

**1.  Negligent Misrepresentation and Fraud in the Inducement**

Defendants spend the bulk of their "Memorandum In Support…" arguing that Plaintiffs' first two causes of action must be dismissed.  (Document No. 23-1, pp.7-16).

"In alleging and supporting a claim for negligent misrepresentation, the essential elements are that plaintiff justifiably relied to her detriment on information prepared without reasonable care by a person who owed the relying party a duty of care."  Patterson v. Flagstar Bank, FSB, 3:12cv707-MOC-DCK, 2013 WL 5217616, at *6 (W.D.N.C. Sept. 17, 2013) (citing Hudson–Cole Dev. Corp. v. Beemer, 132 N.C.App. 341, 346, 511 S.E.2d 309 (1999)).

"The elements of fraud in the inducement are '(1) False representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'"  Recycling Equipment, Inc. v. E Recycling Systems, LLC, 5:14cv056-RLV, 2014 WL 6977766, at *5 (W.D.N.C. Dec. 9, 2014)

(citing <u>Media Network, Inc. v. Long Haymes Carr, Inc.</u>, 197 N.C.App. 433, 678 S.E.2d 671, 685 (2009) (quoting <u>Rowan Cnty. Bd. Of Educ. v. U.S. Gypsum Co.</u>, 332 N.C. 1, 418 S.E.2d 648, 658 (1992)).

First, Defendants assert that "Plaintiffs have not plausibly alleged that Defendants made or caused the making of any false representation." (Document No. 23-1, pp.7-9). However, Defendants then acknowledge that "Plaintiffs have stated that Defendants made certain false statements" and that the Amended Complaint says:

> **Defendants made false representations** and/or directed third parties to make statements to Plaintiffs that **Defendants knew to be false representations**, including: (1) that Defendants intended for the loan payments to be used "for the purpose of working capital and general corporate and operating expenses"; (2) that Ecosolve was an unrelated third party to Plaintiffs' Loan Agreements with EcoPlus; (3) that EcoPlus and Ecosolve 'were not related except as licensee"; (4) that in the event of a default, Plaintiffs would 'have a claim over Ecosolve's assets'; and (5) that Defendants each had no intent to use EcoPlus's proceeds from both the Jenner and Markson Loan Agreements to enable EcoPlus to transfer assets to Ecosolve for their own person[al] benefit.

(Document No. 23-1, p.9) (quoting Document No. 17, ¶ 93) (emphasis added); <u>see also</u>, (Document No. 17, ¶ 86).

The undersigned observes that Defendants neglect to mention that Plaintiffs specifically alleged that these misrepresentations occurred "[o]n or about April 30 and May 1, 2008, during the negotiations of Plaintiffs' Loan Agreements, and continuing throughout the course of EcoPlus' business relationship with Plaintiffs." (Document No. 17, ¶ 93). Moreover, this same paragraph asserts that Defendants "also concealed material facts from Plaintiffs regarding the actual intended use of the payments and the actual relationship between EcoPlus and Ecosolve." <u>Id.</u>

In addition, the Amended Complaint alleges that: Defendants failed to exercise reasonable care and competence required in communicating to Plaintiffs the purposes for which the loaned funds would be used; reliance on Defendants' representations was to Plaintiffs detriment; Plaintiffs "placed a special confidence and trust in Defendants;" and that Defendants' false representations/concealment of material facts were *made with the intent to deceive*, did in fact deceive Plaintiffs, and Plaintiffs were and continue to be harmed by Defendants false representations and/or concealment. (Document No. 17, pp.14-16).

Plaintiffs' response includes this compelling argument:

> The United States Court of Appeals for the Fourth Circuit has held that courts "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [the defendant] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Here, Plaintiffs' allegations make clear that they are in possession of a substantial amount of prediscovery evidence, primarily through discovery in the prior foreign judgment litigation including, but not limited to, information about the assets of, payments to, and distributions made by EcoPlus. Moreover, "Plaintiffs have also pleaded with sufficient factual specificity to make Defendants aware of the 'particular circumstances' for which they will need to prepare a defense." Angell v. Kelly, 336 F.Supp.2d 540, 549 (M.D.N.C. 2004) (denying defendants' motion to dismiss claims for negligent misrepresentation, fraud, and unfair and deceptive trade practices based on allegations of misrepresentations and omissions of material facts).

(Document No. 28, p.4).

To the extent Defendants have raised an alternative argument that Plaintiffs have failed to show justifiable reliance on the alleged misrepresentations, Plaintiffs persuasively argue that such a question is for a fact-finder, and is not appropriate at this stage. (Document No. 23-1, p15; Document No. 28, p.7). Moreover, the undersigned finds that Plaintiffs have adequately

alleged that they justifiably relied, to their detriment, on information provided by Defendants without reasonable care. (Document No. 17).

The closer question here seems to be whether or not Plaintiffs have adequately alleged that Defendants owed them a duty of care. Defendants contend that "Plaintiffs have not alleged the requisite duty." (Document No. 23-1, p.14). Defendants further assert that they "owed Plaintiffs no duty to disclose additional, unrequested information." (Document No. 23-1 p.15).

The Amended Complaint does specifically allege that "Plaintiffs' special confidence and trust in Defendants created a duty of care in Defendants to be reasonably certain the information they provided to Plaintiffs was complete and accurate." (Document No. 17, ¶ 90). In their response Defendants argue that it was unnecessary "to allege a duty to disclose because Plaintiffs did not assert a claim for fraudulent concealment so as to require a duty to disclose." (Document No. 28, p.7).

One of the cases relied upon by Defendants to support their positon provides:

> "A cause of action for fraud is based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a *duty* to disclose." Harton v. Harton, 81 N.C.App. 295, 297, 344 S.E.2d 117, 119 (1986) (emphasis added) (citations omitted). "Negligence is the failure to exercise proper care in the performance of a legal *duty* which the defendant owed the plaintiff under the circumstances surrounding them." Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966) (emphasis added). "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a *duty* of care." Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988) (emphasis added).

Oberlin Capital, L.P. v. Slavin, 147 N.C.App. 52, 58 (2001). Oberlin further provides that:

> "A duty is defined as an 'obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks.'" Davis v.

N.C. Dept. of Human Resources, 121 N.C.App. 105, 112, 465 S.E.2d 2, 6 (1995) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 30, at 164 (5th ed.1984)). A person's "obligation or duty to act may flow from explicit requirements, *i.e.,* statutory or contractual, or may be implied from attendant circumstances." In re Huyck Corp. v. Mangum, Inc., 309 N.C. 788, 793, 309 S.E.2d 183, 187 (1983).

Id. at 59. See also, In re Rutledge, 510 B.R. 491, 506 (M.D.N.C. May 16, 2014) (citing Oberlin, 147 N.C.App. at 58, and Dallaire, 738 S.E.2nd at 736) ("The term 'duty of care' is defined as a legal obligation that requires a party to conform his conduct with a specific standard of reasonableness. . . . The law imposes upon the parties an obligation to perform the contract with ordinary care.")

In Oberlin, the court held that Defendant Slavin's "duty to act flowed from the language" of the loan agreement, which he negotiated and signed. Id. The Loan Agreements at issue in this case appears to lack similar language, however, like Slavin, Defendant Hicks participated by negotiating and signing the Loan Agreements.

Based on the foregoing, as well as a full reading of the Amended Complaint, the undersigned is persuaded that Plaintiffs' factual allegations are sufficient to survive a motion to dismiss. Although Plaintiffs' allegations regarding the duty owed by Defendants related to these claims are somewhat thin, the undersigned is not persuaded that the claims should be dismissed at this time. The undersigned finds the Angell decision by Judge Osteen instructive here. Angell v. Kelly, 336 F.Supp.2d 540, 548-49 (M.D.N.C. 2004) ("Plaintiffs allege numerous specific misrepresentations by [Defendants] and assert that each failed to exercise reasonable care in making the representations.").

As noted above, "[s]pecific facts are not necessary;  the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v.

Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56). Much of Defendants' argument seems to suggest that Plaintiffs must *prove* their case in their initial pleading; that is simply not the standard at this stage of the litigation.

It does not appear Defendants assert a statute of limitations defense as to Plaintiff's first two causes of action. (Document No. 23-1). Nevertheless, the undersigned notes that "[u]nder North Carolina law, a claim for fraud and misrepresentation must be brought within three years of the time Plaintiff **knew or reasonably should have known** of the facts giving rise to the fraud and misrepresentation." Johnson v. J.P. Morgan Chase Nat. Corporate Services, Inc., 3:13cv678-MOC-DCK, 2014 WL 4384023, at *3 (W.D.N.C. Aug. 5, 2014) (citing N.C.Gen.Stat. § 1–52 (three year statute of limitations for fraud and misrepresentation) (emphasis added)). Plaintiffs have indicated that they were not aware of facts giving rise to these claims, and could not have known, before post-judgment discovery in the prior litigation, in or about November 2013. See (Document No. 17, p.14; Document No. 28, p.9).

The undersigned will respectfully recommend that Defendants' motion be denied as to Plaintiffs' claims for negligent misrepresentation and fraud. Of course, such a recommendation is without prejudice to Defendants seeking summary judgment following discovery and further development of the facts of this case.

## 2. Constructive Fraud

Next, Defendants assert that the Court should dismiss Plaintiffs' claim for constructive fraud. (Document No. 23-1, pp.16-17).

"To assert a claim of constructive fraud, plaintiff must allege: (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." Landmar, LLC v. Wells Fargo Bank,

N.A., 978 F.Supp.2d 552, 567 (W.D.N.C. Oct. 17, 2013) (quoting Clay v. Monroe, 189 N.C.App. 482, 488 (2008)). "As a matter of law, there is no fiduciary relationship between a lender and a borrower under North Carolina law." Id. (quoting Branch Banking & Trust v. Thompson, 107 N.C.App. 53 (1992) ("The mere existence of a debtor-creditor relationship between the parties does not create a fiduciary relationship.")).

The undersigned again finds Angell instructive in this case. "North Carolina courts are 'reluctant' to impose 'extra-contractual fiduciary obligations' even though parties to an arms-length transaction may have placed confidence in one another." Angell, 336 F.Supp.2d at 550. "Furthermore, '[a]s a general rule, directors of a corporation do not owe a fiduciary duty to creditors of the corporation.'" Angell, 336 F.Supp.2d at551. "Since Defendants did not owe any fiduciary duty to Plaintiffs under North Carolina law, Plaintiffs cannot support a claim for breach of that duty or a claim of constructive fraud." Id.

Defendants argue that the parties here interacted at "arms-length," and there was no special relationship between the parties giving rise to a fiduciary duty. (Document No. 23-1, pp.16-17) (quoting Highland Paving Co., LLC v. First Bank, 742 S.E.2d 287, 292-293 (N.C.App. 2013). Defendants go on to conclude that it is not plausible that Plaintiffs "placed a special confidence and trust in Defendants with regard to how EcoPlus would use the loan proceeds." (Document No. 23-1, p.17).

Plaintiffs acknowledge that "the mere existence of a debtor-creditor relationship between the parties does not create a fiduciary relationship." (Document No. 28, p.7) (quoting Branch Banking and Trust Co. v. Thompson, 107 N.C.App. 53, 61 (1992). Plaintiffs then argue that they have gone "well beyond invoking a statutorily created right and have alleged that Defendants made a series of false representations inducing them to enter into the Loan Agreements."

(Document No. 28, p.8). Plaintiffs further argue that Defendants' false representations could not be discovered, even after diligent investigations, and thus Defendants were in a position of power and at a "heightened level of trust." Id. Plaintiffs conclude that based on this position of power and trust, Defendants owed a fiduciary duty to Plaintiffs. Id.

The undersigned is not persuaded that Plaintiffs have made adequate factual allegations, or citations to legal authority, to overcome what appears to be well-established law that the relationship they have described is not one of such "trust and confidence" to support a claim for constructive fraud. The undersigned will recommend that this claim be dismissed.

### 3. Tortious Interference with Contract

Defendants also argue that Plaintiffs' tortious interference with contract claim must be dismissed. (Document No. 23-1, pp.17-18). Specifically, Defendants contend that such a claim must be brought "within three years of the accrual of the cause of action." (Document No. 23-1, p.17) (citing N.C.Gen.Stat. § 1-52(5) and Johnson v. Graye, 251 N.C. 448, 452 (1959)).

The elements of tortious interference with contract are:

> (1) the existence of a valid contract between plaintiff and a third party; (2) knowledge by defendant of the contract; (3) acts by defendant to intentionally induce the third party not to perform the contract; (4) defendant's acts were committed without justification; and (5) actual damage to the plaintiff.

Branch v. Guida, 3:09cv417-MOC, 2011 WL 1770074, at*5 (W.D.N.C. May 9, 2011) (quoting Barker v. Kimberly–Clark Corp., 136 N.C.App. 455, 462 (2000)).

Plaintiffs do not contest the argument that the statute of limitations for tortious interference with contract is three years. (Document No. 28, pp.8-10). Instead, Plaintiffs assert the statute of limitations should not apply to this claim based on the doctrine of equitable estoppel. (Document No. 28, pp.9-10). According to Plaintiffs:

The elements of equitable estoppel are:

> (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

> Friedland v. Gales, 131 N.C. App. 802, 807, 509 S.E.2d 793, 796-97 (quoting Parker v. Thompson–Arthur Paving Co., 100 N.C. App. 367, 370, 396 S.E.2d 626, 628-29 (1990)). All of these elements are satisfied here.

(Document No. 28, p.9). Plaintiffs again assert that they had no way to discover the intentional false representations and concealment allegedly perpetrated by Defendants during the events underlying this action, until November 2013. Id.

Plaintiffs conclude that "Defendant has breached the golden rule and fair play, justifying the entry of equity to prevent injustice." (Document No. 28, p.10) (citing Duke Univ. v. Stainback, 320 N.C. 337, 341, 357 S.E.2d 690, 693 (1987) (holding that "the facts found are sufficient to support the conclusion that [defendant] is estopped to plead the statute of limitations as a defense")).

In reply, Defendants contend that they did not do "anything while the limitations period ran to prevent Plaintiffs from discovering the facts upon which they premise their claims for tortious interference and unfair trade practices," and "Plaintiffs could have inquired as to any and all of the conduct of Defendants at any time." (Document No. 29, p.8). Defendants argue that "Plaintiffs have no right simply because this case involves allegations of fraud to *wait and do nothing* while the limitations period runs." Id. (emphasis added).

Defendants do not address the fact that while the limitations period was running, Plaintiffs were pursuing their original claims against EcoPlus in this Court, then in the United Kingdom, and then back in North Carolina. Defendants also decline to address Plaintiffs' allegation that the information supporting its current claims was *concealed* by Defendants and not discovered until November 2013.

Based on the parties' arguments and cited authority, the undersigned will recommend that Defendants' motion to dismiss the cause of action for tortious interference with contract be denied. See K.A. Holdings Ltd. of N.Y. v. Chagaris, 2013 WL 1965993, at *6 (W.D.N.C. May 10, 2013) ("suffice it to say that the allegations in the complaint, when taken as true, sufficiently outline a story of fraudulent misrepresentation that convinces the court to allow plaintiff's claims to proceed in spite of the statute of limitations.").

**4. The Unfair and Deceptive Trade Practices, Civil Conspiracy, and Punitive Damages**

Finally, Defendants make the conclusory argument that the remaining claims should be dismissed because "Plaintiffs fail to state plausible causes of action in their efforts to allege fraud, negligent misrepresentation, constructive fraud, and tortious interference with contract, Plaintiffs also fail to state claims for civil conspiracy, unfair or deceptive trade practices, and punitive damages. (Document No. 23-1, p.18); see also, (Document No. 29, p.9) ("For the reasons set forth in Defendants' principal memorandum, Plaintiffs' remaining claims do not raise any plausible right to relief, and the Court should dismiss those claims.").

Defendants' arguments and authority, or lack thereof, are not persuasive. (Document No. 23-1, p.18; Document No. 29, p.9). As discussed above, the undersigned finds that most of Plaintiffs' claims should survive at this stage. Therefore, Defendants' conclusory argument is not helpful to the Court's analysis.

Contrary to Defendants' position, the undersigned finds that the remaining claims should not be dismissed. The undersigned again finds <u>Angell</u> instructive here:

> by adequately pleading their fraud and negligent misrepresentation claims, Plaintiffs have also pleaded their claim of unfair and deceptive trade practices with sufficient particularity. <u>See</u> <u>Powell v. Wold</u>, 88 N.C.App. 61, 68, 362 S.E.2d 796, 800 (1987) ("Because the claims ... based on fraud and negligent misrepresentation have been held ... sustainable past a Rule 12(b)(6) motion to dismiss, the claim of unfair and deceptive trade practices cannot be dismissed. 'Proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive trade practices.' ") (quoting <u>Webb v. Triad Appraisal & Adjustment Serv., Inc.</u>, 84 N.C.App. 446, 449, 352 S.E.2d 859, 862 (1987)); <u>accord</u> <u>Hunter v. Guardian Life Ins. Co. of Am.</u>, 162 N.C.App. 477, 593 S.E.2d 595, 601 (2004). As such, the court will also deny Kelly, Pickett, and Booth's motion to dismiss Plaintiffs' claim for unfair and deceptive trade practices.

<u>Angell</u>, 336 F.Supp.2d at 550.

To the extent Defendants argue that the statute of limitations limits Plaintiffs' unfair and deceptive trade practices claim, the undersigned finds Plaintiffs' equitable estoppel argument applicable. (Document N. 23-1, p.18; Document No 28, pp.8-9). Moreover, as also discussed above, Plaintiffs have adequately alleged that their claim(s) did not accrue until November 2013. <u>See</u> <u>Anderson v. U.S. Life Ins. Co.</u>, 3:13cv489-MOC, 2014 WL 4987207, at *5 (W.D.N.C. Oct. 7, 2014) ("It is undisputed that under North Carolina law, a UDTPA claim accrues and the four year limitations period begins to run when the unfair or deceptive act **is discovered or should have been discovered** in the exercise of reasonable diligence.") (emphasis added); <u>see also</u>, <u>Anderson</u>, 2014 WL 320375, at *4 (same).

Plaintiffs have declined to offer any substantive reasons why *any* of the remaining claims should be dismissed; therefore, the undersigned will recommend that the motion to dismiss be denied as to civil conspiracy, unfair and deceptive trade practices, and punitive damages.

**B. Motion To Strike**

Defendants also request that the Court strike the exhibits filed by Plaintiffs on October 27, 2014.  See (Document Nos. 30 and 31).  Although it is unclear why it took Plaintiffs so long to file these attachments for their Amended Complaint, especially since Defendants identified the error by September 10, 2014, the undersigned is not persuaded that Defendants have suffered any prejudice.

In short, the Court finds "Plaintiffs' Brief In Opposition To Defendants' Motion To Strike" (Document No. 32) to be compelling, and Defendants have declined to file a reply brief refuting Plaintiffs' arguments.  In particular, it appears that the omission was inadvertent, and that Defendants are aware of, and familiar with, the Loan Agreements filed as attachments.

## RECOMMENDATION

**IT IS, THEREFORE, RECOMMENDED** that Defendants' "Motion To Dismiss For Failure To State A Claim" (Document No. 9) be **GRANTED in part**, and **DENIED in part**, as described herein**.**

**IT IS FURTHER RECOMMENDED** that Defendants' "Motion To Strike" (Document No. 31) be **DENIED**, and Plaintiffs be directed to file a Second Amended Complaint including the cited attachments.

**IT IS FURTHER RECOMMENDED** that the parties be Ordered to immediately schedule an Initial Attorney's Conference pursuant to Local Rule 16.1.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14)**

**days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: February 18, 2015

David C. Keesler
United States Magistrate Judge